UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
IN RE CURRENCY CONVERSION          :     MDL No. 1409
                                   :     M-21-95
 ANTITRUST LITIGATION,             :
- - - - - - - - - - - - - - - - - -:
ROBERT ROSS, et al.,               :
                                   :
                    Plaintiffs,    :     05 Civ. 7116 (WHP)(THK)
                                   :
                                   :
          -against-                :     **MEMORANDUM OPINION AND**
                                   :            **ORDER**
                                   :
BANK OF AMERICA, N.A., et al.,     :
                                   :
                                   :
                    Defendants.    :
-----------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiffs in this class action challenge the addition of
arbitration provisions to their consumer credit card agreements
with, among others, Defendants Citigroup Inc., Citibank, N.A.,
Citibank USA, N.A., Universal Bank, N.A., Universal Financial Corp,
and Citicorp Diners Club (collectively "Citi"), and Defendants DFS
Services LLC, Discover Bank, and Discover Financial Services
(collectively "Discover"). Plaintiffs contend that Defendants and
other financial institutions unlawfully conspired to add
arbitration provisions to their credit card agreements, in
violation of federal antitrust law, § 16 of the Clayton Act, 15
U.S.C. § 26. Presently before the Court is Plaintiffs' Motion to
Compel the Production of documents of Defendants Citi and Discover,
for which either the entire document or redacted portions have been

COPIES MAILED
TO COUNSEL OF RECORD ON ___11/3/10___

withheld on the basis of the attorney-client privilege. Plaintiffs contend that the privilege has not been properly asserted because Defendants' privilege logs are cursory and vague, and no other support was produced for the privilege. Plaintiffs argue, in any event, that the documents were improperly withheld on the basis of privilege because: (1) they are business documents that were not created for the purpose of giving or receiving legal advice; and (2) they were widely circulated among non-legal, business personnel, and an attorney was merely identified as one of the recipients.

## BACKGROUND

The documents in issue were largely generated as part of a process at the Defendant corporations by which they reached decisions about whether to add arbitration provisions to their consumer credit card agreements, as well as other contracts, and, after they were added, whether to modify those provisions. Defendants contend that, by necessity, both in-house and outside counsel were involved in the analysis, and were critical in addressing such matters as the legal propriety and implications of arbitration provisions, the substance of the provisions, the nature of the arbitration process and its ramifications, and the information conveyed to consumers about the arbitration provisions and process.

2

After Plaintiffs raised objections to the adequacy of Defendants' privilege logs and the propriety of withholding many, if not all, of the documents in the logs, Defendants re-reviewed their withheld documents and, in some cases, withdrew their claim of privilege. Nevertheless, with respect to Defendant Discover, it appears that approximately 123 documents remain in dispute. The number of Citi documents in dispute is substantially smaller. After considering the parties' extensive written submissions on the motion, the Court requested that a random sample of the documents on the privilege logs be submitted for in camera review. Having engaged in that review and considered the parties' positions, the Court draws the following conclusions.

I. Adequacy of the Privilege Logs

It is beyond dispute that the party asserting privilege has the burden of establishing privilege with respect to each withheld document. "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007).

The Federal Rules of Civil Procedure describe in only general terms what a party must do to properly invoke privilege: "describe the nature of the documents . . . and do so in a manner that,

3

without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(a)(5)(A)(ii) ("Rule 26"). Meat is put on those bare bones by this Court's Local Rules. For documents withheld on the basis of privilege, a party must produce a log identifying: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document, including, where appropriate, the author of the document, the addressees of the document, and any other recipients of the document, and, where not apparent, the relationship of the author to the addressees and recipients. See Local Civil Rule of the Southern District of New York 26.2(a)(2)(A) ("Local Rule 26.2").

Plaintiffs argue that Defendants' privilege logs contain only "rudimentary information" that "falls far short of establishing that the documents in question are in fact privileged." (Memorandum in Support of Plaintiffs' Motion to Compel Production of Citi and Discover Documents Subject to an Assertion of Privilege ("Pls.' Mem."), at 9.) They argue that the "mere conclusory ipse dixit assertions" in the logs are inadequate to discharge Defendants' burden of demonstrating privilege, and that Defendants were required to supplement the logs with evidentiary submissions. (Id.)

Having reviewed Defendants' privilege logs, the Court finds

4

that they generally comply with the requirements of Rule 26 and Local Rule 26.2. Although Plaintiffs contend that the information in the logs is sparse and lacks detail, the Court cannot agree. Both logs provide the information required by Local Rule 26.2, most particularly, they describe the authors and recipients of the documents, the nature of the documents and their general subject matter, as well as the role of counsel in either authoring or providing a response to the documents.

Plaintiffs' reliance on the Second Circuit's decision in United States v. Constr. Prods. Research, Inc., 73 F.3d 464 (2d Cir. 1996), for the proposition that a privilege log must be supplemented with other evidence, is misplaced. In that case, the privilege log was found woefully inadequate because the document descriptions and comments did nothing to demonstrate why privilege had been invoked. For example, with respect to one document, the log entry stated: "Fax: Whistleblower article with comment 'Self-explanatory,'" and with respect to another document "'Summary of Enclosures' with comment 'Self-explanatory'." Id. at 474. Understandably, the court concluded that without additional factual support, the privilege had not been properly asserted or supported. Here, by contrast, one Discover log entry in issue reads: "Email chain and attached project document and flow charts re arbitration opt-out requesting and reflecting legal advice of in-house counsel

5

re arbitration opt-out procedures." (Discover Privilege Log Entry
No. 105.)    Another entry that is in issue reads: "Training
document reflecting legal advice from in-house counsel re
arbitration provision." (Discover Privilege Log Entry No. 158.)
And, by example, one entry in the Citi Privilege Log that is in
issue reads: "Draft Report - This document is a forwarded document
prepared at the request of Julie Nelson and Ed Burge [attorneys]
and sent to counsel so that they can provide legal advice about
arbitration clauses in consumer agreements." (Citi Privilege Log -
Nelson0449659.)  Another document is an email thread described as
"provid[ing] legal advice from Karla Bergeson and Julie Nelson [on]
arbitration clauses in consumer agreements.   Initial email from
Karla Bergeson provided legal advice about training materials.
Other emails in the string seek legal advice from Karla Bergeson
and Julie Nelson and provide legal advice in response to those
requests." (Citi Privilege Log - Nelson0529993.)   These entries
satisfy the requirements for the initial invocation of the
attorney-client privilege. See Constr. Prods. Research, 73 F.3d at
473 (requiring that a privilege log provide "sufficient detail to
permit a judgment as to whether the document is at least
potentially protected from disclosure").

What Plaintiffs really take issue with is the assertion of
privilege for documents that appear to have been circulated to and

6

among business staff, and which appear to them to be business documents, rather than confidential legal communications — for example, training materials and information about the arbitration provisions that was to be conveyed to consumers. That concern, however, is not a function of the adequacy of Defendants' privilege logs, but, rather, of Plaintiffs' skepticism about whether the privilege can be supported. In response to that skepticism, which underlies Plaintiffs' motion to compel, Defendants have properly responded by submitting declarations in which various attorneys provide further explanation of why privilege was invoked. See AIU Ins. Co. v. TIG Ins. Co., No. 07 Civ. 7052 (SHS)(HBP), 2008 WL 4067437, at *8 (S.D.N.Y. Aug. 28, 2008) (after the assertions of privilege in a log are challenged and the dispute cannot be resolved informally, the withholding party must then submit to the court evidence by way of affidavit and deposition testimony establishing the elements of the privilege).

The Court will therefore turn to the substantive question of whether the documents in issue are properly subject to the attorney-client privilege.

II. Merits of the Invocation of Privilege

Plaintiffs argue that Defendants improperly invoked the attorney-client privilege for business documents that were not created predominantly for the purpose of giving or receiving legal

7

advice.    They contend that simply because a lawyer contributed to
a  business  document  does  not  transform  the  document  into  a
privileged  communication.    Moreover,  according  to  Plaintiffs,  the
distribution  pattern  of  many  of  the  documents,  to  many  non-lawyer
business  employees,  for  a  business,  rather  than  legal  purpose,
further belies Defendants' claim of privilege.

    A. <u>Applicable Legal Principles</u>

    To  be  privileged,  a  communication  must  be  for  the  purpose  of
obtaining  or  providing  legal  advice  and  assistance.    Where,  as
here,  in-house  counsel,  who  are  often  business  executives,  are
involved  in  the  communications,  "the  question  usually  is  whether
the  communication  was  generated  for  the  purpose  of  obtaining  or
providing legal advice as opposed to business advice." <u>County of</u>
<u>Erie</u>, 473 F.3d at 419; <u>see also</u> <u>AIU Ins. Co.</u>, 2008 WL 4067437, at
*6  ("[W]here  in-house  counsel  also  serves  as  a  business  advisor
within  the  corporation,  only  those  communications  'related  to
legal,  as  contrasted  with  business,  advice  are
protected.'")(quoting <u>TVT Records v. Island Def Jam Music Group</u>,
214 F.R.D. 143, 144 (S.D.N.Y. 2003)).    The test to be employed is
"whether the predominant purpose of the communication is to render
or  solicit  legal  advice." <u>Id.</u> at  420.  Although  legal  advice
"[f]undamentally . . . involves the interpretation and application
of  legal  principles  to  guide  future  conduct  or  to  assess  past

conduct," the role of corporate lawyers is broader and "not demarcated by a bright line." Id. at 419-20. As the Second Circuit has observed:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking advice or doing otherwise; what other persons are doing and thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.

Id. at 420.

However, "[t]he predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting legal authorities and advice that can be given by a non-lawyer." Id. at 420-21. Moreover, even where the predominant purpose of a document or communication is business, that is, non-legal, such a document can also contain legal advice, which can be redacted on the basis of the attorney-client privilege. See id. at 421 n.8.

Although Plaintiffs point to the distribution of many of the communications in issue to large numbers of corporate employees, a communication containing legal advice does "not lose [its]

9

privileged status when shared among corporate employees who share responsibility for the subject matter of the communication." Baptiste v. Cushman & Wakefield, Inc., No. 03 Civ. 2102 (RCC)(THK), 2004 WL 330235, at *2 (S.D.N.Y. Feb. 20, 2004) (citing cases); accord Verschoth v. Time Warner, Inc., No. 00 Civ. 1339 (AGS)(JCF), 2001 WL 286763, at *2 (S.D.N.Y. Mar. 22, 2001) ("[T]he person to whom an executive relays legal advice must share responsibility for the subject matter underlying the consultation in order for the privilege to be preserved. Furthermore, the originator of the communication must have intended that it be kept confidential, and it may not be circulated beyond those employees with the need to know the information.") (internal citations and quotations omitted).

B. Application to Withheld or Redacted Documents

The former General Counsel for Consumer Litigation at Citigroup, Inc., Julie Nelson, as well as other in-house attorneys, submitted a sworn declaration in support of Citi's invocation of the attorney-client privilege.  In her declaration, Ms. Nelson attests that one of her specific responsibilities was to provide legal advice regarding issues related to arbitration.  Specifically, she provided legal advice regarding:

> (1) whether to adopt arbitration, (2) the legal procedures for implementing and enforcing arbitration change-in-term notices, (3) the terms of the Citi Cards change-in-terms notice and the arbitration clause, (4) draft training materials for customer service

10

representatives to answer cardholder questions regarding arbitration procedures reflected in change-in-terms notices and the arbitration clause, (5) customer correspondence regarding arbitration, (6) draft questions and answers for possible media inquiries regarding, among other things, the terms of the arbitration clause, and (7) other legal issues that arose from time-to-time regarding arbitration, including litigation regarding the enforcement of arbitration clauses.

(Declaration of Julie D. Nelson in Support of the Citi Defendants' Response to Plaintiffs' Motion to Compel, dated Aug. 18, 2010 ("Nelson Decl."), ¶ 2.)   According to Ms. Nelson, the non-lawyer recipients listed on emails were involved in implementing various aspects of the change-in-terms notice and the arbitration clause for Citi Cards. "Given the size of the change-in-terms project, which required amendments to tens of millions of cardmember agreements, numerous individuals from several different Citi Cards business units required legal advice from the law department regarding many different aspects of the project.  Non-lawyer employees generally understood that communications to and from in-house or outside counsel are confidential." (Id. ¶ 3.)  Ms. Nelson, as well as other in-house and outside Citi counsel then set forth in their declarations their understanding of why specific documents were either withheld or redacted, by referencing the context in which legal advice was either sought or given.

Similarly, various Discover attorneys have submitted declarations setting forth their review of withheld or redacted

11

documents, and explaining the general nature of the legal advice that was being sought or given, as well as its context.  Discover asserts that the process through which it added the arbitration provision to its credit card agreements "included the extensive involvement of Discover's in-house and outside counsel, each of whom provided legal advice and counsel throughout the process." (Discover's Memorandum in Opposition to Plaintiff's Motion to Compel ("Discover Mem."), at 2.)  In addition, modification of Discover's arbitration provision, to allow an opt-out, also heavily relied on the advice of counsel. (See id. at 3.)  Discover asserts that, while it produced more than 10,000 pages of documents in the litigation, it engaged in a "meticulous and time-consuming process which resulted in a privilege log which contained more than 1,300 entries." (Id. at 4.)  Nevertheless, after it received Plaintiffs' correspondence challenging the assertion of privilege, and after engaging in numerous meet and confers, in a good faith effort to resolve their differences, it produced over 200 documents that had been on the privilege log.

In response to the Court's request, a random sample of approximately 25% of the Citi documents at issue in Plaintiffs' motion to compel, as well as the specific documents discussed in Plaintiff's Reply Memorandum of Law, were produced for in camera review.  The Court's review of these documents leads me to conclude

12

that, for the most part, the attorney-client privilege was properly invoked.

There is no doubt that many business considerations went into the decision to adopt an arbitration provision, and that business people were involved in the decision-making process and implementation. However, there can also be no question that the resolution of many legal issues were critical to the decision to add an arbitration provision to consumer credit card agreements. Bank consumer lending and credit card businesses are highly regulated, and the requirement that disputes be subject to arbitration rather than litigation, has obvious legal ramifications. Thus, in implementing the change, in-house and outside counsel were deeply involved in, and critical to: (1) the decision-making process; (2) drafting of the provisions; (3) how consumers were notified of the changes to their agreements; (4) the explanations given to consumers about the new provisions; and (5) the training of bank personnel in how to respond to consumer questions about the arbitration provisions.

The documents in issue all deal with these matters, and Defendants appear to have made a good-faith effort to disclose the business-related portions of the documents, while redacting only those portions in which attorneys were viewed as conveying legal advice or analysis. There is not always a bright line demarcation

13

of the two areas, and reasonable people could disagree as to some of the redactions.[1]  Nevertheless, I see no evidence of Plaintiffs' concern that an "entire document related to the project [was withheld] based on a lawyer's stray comment during the process." (Plaintiffs' Reply Memorandum in Further Support of Plaintiff's Motion to Compel ("Pls.' Reply Mem."), at 5.)  Moreover, although large groups of business people were, at times, parties to the communications, standing alone that fact does not undermine the privileged status of the documents or redacted material.  For the most part, where documents containing attorney opinions and legal advice were circulated to business people, the documents were marked privileged and confidential, thus creating the expectation that they should not be disseminated more widely.

Nor does the Court agree with Plaintiffs' contention that such things as training materials are, by definition, business documents, and cannot be privileged because the predominant purpose of these documents was not to convey legal advice.  Thus, according to Plaintiffs, "a lawyer simply drafting a Q&A is a lawyer engaged in a business practice."  (Pls.' Reply Mem. at 7, n.8.)  Having

---

[1] Although not relevant to the analysis, for those redactions where the Court views the distinction between legal and business advice to be a close call, the material redacted is fairly innocuous and, in the Court's view, is not material to the claims and defenses of the parties.  As is often the case, the vehemence of the dispute about privilege far overshadows the importance of the material in issue.

14

reviewed the draft training materials, which were authored by an attorney and sent to other attorneys for revisions, it is clear that these are materials for which a corporation would choose to rely upon an attorney's advice and legal expertise.  In the materials, attorneys are advising customer service representatives as to what the arbitration provision means and entails, and how to respond to customer questions about the arbitration provision.  Where interactions with customers can reasonably be expected to have legal consequences, advice from an attorney on how to respond to customer inquiries is legal advice.

With these general principles in mind, the Court now turns to consideration of specific examples discussed in Plaintiffs' Memoranda, which have been produced for in camera review.

A. Citi Documents

Ross-Citi 23851- This document, setting forth a plan and timetable for deciding whether to adopt an arbitration provision and, if so, how to implement it, although authored by an attorney, was produced to Defendants.  Only six lines were redacted, with Citi claiming that those lines contain either legal advice or analysis. With one exception, the redactions are appropriate.  One line — "As part of this phase, consumer surveys or focus groups should be conducted to ensure that the program will be customer friendly" — appears to the Court to be business advice that does not require

15

legal expertise or training.

Ross-Citi 23748-RR to 23749-RR - This document is an email thread in which several lines were redacted.  Although Plaintiffs speculate that the redacted material is likely to contain "another non-privileged description of the work being performed rather than a request for or the provision of legal advice," (Pls.' Reply Mem. at 9), the redactions do, in fact, contain legal advice.

Ross-Citi 25011-R to 25014-R - This document was authored by an attorney and sent to Charles Prince, then General Counsel of Citigroup, and the redacted portions reflect legal analysis regarding arbitration, as well as a discussion of two recent court decisions which reached different conclusions about the enforceability of arbitration provisions in consumer contracts.  The redacted portions contain classic legal advice and analysis.

Ross-Citi 25928 to 25930 - The only redacted sentence in document 25928 contains the legal advice of outside counsel. Contrary to Plaintiffs' contention, it is not necessary that outside counsel be a party to the communication, as an in-house attorney was conveying outside counsel's view.  The paragraph redacted in document 25930 contains in-house counsel's discussion of the potential legal implications of a case that was then before the Supreme Court.  This involves classic legal analysis and advice. Ross-Citi 23742 to 23744 are duplicates of these documents.

16

Ross-Citi – 23755-R to 23756-R – This is an email thread which was generated shortly after Citicorp acquired Travelers Insurance. The attorneys on the thread are senior attorneys at Citi. Plaintiffs contend that because the genesis of these communications involved a request for ideas that might help the business, "the request has an obvious business purpose, and any follow up discussion is likely to focus on business issues." (Pls.' Reply Mem. at 10.)

Simply because ideas or projects were being considered to help the business, does not mean that the consideration of those ideas was divorced from legal considerations.  What is apparent from the emails is that the concept of arbitration of consumer disputes was one of the business projects being considered, and this clearly required legal as well as business analysis.  The bulk of the redacted material involves just such legal analysis and discussion, and was properly withheld on the basis of the attorney-client privilege.

The Court takes issue, however, with the redaction of several lines in the first and final emails in the thread.  The first two lines of the November 21, 1998 email from Julie Nelson to Joan Warrington, simply express an understanding of the past business attitudes of Citi and Travelers, respectively, to the use of arbitration.  This does not involve legal analysis or advice, and

17

should be unredacted.  Similarly, the first three lines of the last email, dated November 23, 1998, appear to the Court to involve very general business considerations about whether arbitration should be considered, and do not involve legal analysis or legal advice.  As discussed, however, the substance of these redactions is entirely innocuous and the redactions do not appear to be a function of some nefarious attempt to shield critical evidence from Plaintiffs.

Ross-Citi 19939-R to 19941-R - This email thread was produced largely intact, except that the final two emails were redacted.  In the email thread, an in-house attorney (Maura Solomon) forwards to Julie Nelson, a higher level in-house attorney, a draft of an ABA study on the consumer benefits of mandatory arbitration, asking if Nelson has any comments.  Nelson responds that she does not have any comments.  One line of her response is redacted, as well as the one-line reply to that response.   The redacted material, stating that Nelson would like to see the final version of the report, and the reply, that it will be provided, is not privileged.  This is neither legal opinion nor advice.

Ross-Citi 123614 - This email exchange between Julie Nelson, in-house counsel, and another in-house lawyer/government affairs employee, discusses the idea of retaining an expert to review Citi's draft arbitration provision so, if necessary, he could testify favorably before Congress about the provision.   This is not a

18

discussion of legal strategy, as might occur in the context of retaining an expert for litigation. Rather, it involves political strategy which, at least in these emails, does not require or reflect the legal expertise of an attorney. Moreover, the "strategy" itself is not deleted from the emails. In fact, most of the redacted material merely involves a list of the names of potential experts (political figures) whose views might be well-received by Congress. Yet, left unredacted is the entire response to the opening email, which makes reference to one of the potential experts whose name was deleted from the opening email. This is, in essence, a discussion about retaining a lobbyist as a matter of business strategy. The full email chain should be produced.

With the exceptions noted above, which involve fairly innocuous redactions that do not reflect a pattern of overzealous invocation of the attorney-client privilege, the Court concludes that the attorney-client privilege has been properly asserted and supported by Citi.

    B. Discover Documents

Discover has also submitted approximately 25% of the documents on its privilege log for in camera review. After undertaking that review, the Court had some uncertainty about the rationale for Discover's invocation of privilege with respect to a number of documents. Therefore, with the parties' consent, the Court

19

addressed its questions to Discover's counsel _ex parte_.[2]  Discover's
attorneys were completely forthcoming and refreshingly frank in
acknowledging the merit of some of the Court's skepticism.  Indeed,
in some cases, Discover's counsel willingly agreed to produce
certain documents that had been withheld.  In the end, the Court
concludes that Discover's invocation of the attorney-client
privilege was, in some cases, more expansive than can be justified.
Nevertheless, the Court perceives no attempt by Discover to hide
critical or material information.  Most of the information that was
withheld or redacted is of little consequence to this litigation,
and, in the end, much of it was disclosed in other documents.

Although many of the documents on the log are business
documents, for example Business Product Specification ("BPS")
documents, only a small section of the documents relates to the
arbitration provision, and it is the withholding or redaction of
that section that is in issue.  As with the Citi documents, even the
redacted material is fairly innocuous and it is difficult to believe
that it could have any material bearing on the parties' claims and
defenses.

Plaintiffs' repeated objection that the predominant purpose of
the documents in issue is business, rather than legal, misses the
point.  As discussed, the draft of a document written for business

---

[2] The Court's _ex parte_ conference was, however, transcribed.

reasons can contain legal comment and advice.  While, as Plaintiffs contend, a lawyer's contribution to a business document does not transform the entire document into a privileged communication, if a lawyer's advice or input is based on legal expertise and training, that advice, not the entire resulting document, is privileged.  Just because the documents were distributed for business purposes, such as developing protocols for advising customers of the arbitration provision and tracking customer decisions to opt in or opt out of their agreements, does not undermine the fact that they were also distributed to attorneys for comment and review.  Again, only the legal advice and input of the attorneys, not the business comments or protocols, may be withheld on the basis of privilege.

With those principles in mind, the Court does take issue with Discover's claim of privilege with respect to a number of documents and redactions.

Discover Log Entry No. 736 - This is an email thread that was prompted by a request from Deborah Lowe, an in-house attorney, for information about the number of people who chose to opt out of the Discover arbitration provision.  The request was not from a client seeking legal advice; rather, it was for straightforward factual information about the number of people who had chosen to opt out of the arbitration requirement.  In response to the Court's comments, Discover agrees to withdraw the claim of attorney-client privilege

21

for this document.

Discover Log Entry No. 1182 - (identical or substantially similar to Entries 106-10, 152-56, 159-63, 176-80, 183-87, 375-79, 380-84, 385-89, 643-44, 645-46, 649-50, 1183, 1184, 1350)- This is an excerpt from BPS documents, that was reviewed and approved by in-house counsel, among others.  Discover contends that the statements in the document are based on legal advice, although the section title is "Business Requirements Overview."  The Court concludes that these are merely business documents, describing in very general terms what the process will be for notifying customers of the addition of the arbitration provision and what they must do to opt out.  This document is not one in which the legal merits of the proposal are being discussed, but merely one in which business people are being instructed on mechanical steps that must be implemented and followed. Indeed, the same mechanical steps were disclosed in other documents, for example, Log Entry Nos. 329 and 339 (at 012574). (The only redaction in Entry No. 329 is on page 10060, and the only redaction in Entry No. 339 is on page 012590.)  In the Court's discussion with counsel, counsel focused on the final paragraph of the document, which, in essence, states that "legal" needs the ability to track cardmembers who opt out or attempt to opt out of the arbitration provision, and that all correspondence from cardmembers on those subjects must be stored for future reference.  That the legal

22

department needed to keep track of customer data hardly constitutes a confidential communication for the purpose of imparting legal advice.  Moreover, the need to keep track of and maintain data on customer opt-outs is discussed throughout other documents that were produced to Plaintiffs, for example, Entry No. 339.

Discover Log Entry Nos. 158, 175, 182, 188 - Most of this training document is unrelated to the arbitration provision.  The last page, however, does communicate legal advice to customer representatives about how to respond to customer questions about the arbitration provision.  As with a similar Citi document, this aspect of customer relations could reasonably be viewed as having legal ramifications.  Therefore, Discover drew on the particular expertise of attorneys to provide input into what should and should not be told to customers.  The attorney-client privilege was properly invoked.

* * *

The Court assumes that Discover's counsel will re-review its privilege log to ensure that any documents identical or similar to the documents described above as containing business advice, are produced to Plaintiffs.  Discover properly invoked the attorney-client privilege with respect to the other documents that have been reviewed.

So Ordered.

23

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: November 3, 2010
       New York, New York